HOVANES JOHN TONOYAN
6627 Beeman Ave
North Hollywood CA, 91606
T: 818 281 7473
E: hoviktonoyan@gmail.com

*Pro Se / Self-Represented*



FILED

AUG 17 2022

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>LUSINE CRISTINE DOKUZYAN,<br><br>      Debtor(s).<br><br>―――――――――――――<br><br>HOVANES JOHN TONOYAN, an individual,<br><br>      Plaintiff(s),<br><br>  vs.<br><br>LUSINE CRISTINE DOKUZYAN, an individual,<br><br>      Defendant(s). | BK Case No.: 1:22-bk-10283-MB (Chapter 7)<br>AP Case No.: 1:22-ap-01028-MB<br><br>**(CREDITOR/PLAINTIFF)**<br><br>**Plaintiff's Opposition to Defendant's Motion for Protective Order (in the BK case):**<br><br>**HEARINGS (consolidated):**<br>• **Debtor's Motion for Protective Order (BK)**<br><br>Date: August 31, 2022<br>Time: 2:30PM PST<br>Place: Courtroom 303, or via Zoom<br>       21401 Burbank Boulevard<br>       Woodland Hills, CA 91367 |

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE; THE UNITED STATES TRUSTEE; THE CHAPTER 7 TRUSTEE; THE DEBTOR; COUNSELS; AND ALL OTHER PARTIES IN INTEREST:**

1    The Plaintiff's *Opposition* will be based on on attached memorandum of points and authorities,

2    case records on file, and on such oral arguments as may be presented at the hearing.

3    Plaintiff **respectfully requests** that the Court on *regular, shortened, or ex parte notice for good*

4    *cause shown* by way of §105(a), FRBP 9006(b)-(d), LBR 9013-1(c)(2), (d)(1)-(2), and (o)(1), consider

5    any part of the protective order motion and related opposition on the briefs without hearing—*in advance*

6    of August 31, 2022; or alternatively to set it for hearing and consider any part of the protective order

7    motion and related opposition with or without oral arguments during the August 31, 2022 *consolidated*

8    *hearings*; or alternatively, continue any part of the protective order motion and related opposition for a

9    later determination on the briefs without hearing; or set any part of the protective order hearing for a

10   future hearing on the briefs and with or without oral arguments. **Plaintiff requests** considerations of the

11   protective order motion and related opposition to be *without examination or live testimony of the*

12   *Plaintiff.*

13

14   If the Court is inclined to admit or consider any portion of the *Motion for Protective Order*,

15   Plaintiff will attempt to file briefs and orally argue oppositions and objections to preserve their rights

16   and prepare to defend their position. If the Court orders an examination or the live testimony of any

17   party supporting or opposing the motion, **Plaintiff requests** a continuance of the hearing. Plaintiff

18   requests that only in the case of any oral argument or hearing compel the attendance and production of

19   the Defendant and any other witness they use or reference to support their motion, so that the Court and

20   the Plaintiff may examine them under oath.

21   Plaintiff includes an evidentiary *Declaration* signed under penalty of perjury, and other

22   documentary, photographic, or written evidence—in support of his *opposition*.

23

24

25

26

27

28

# TABLE OF CONTENTS

**I.    PRELIMINARY STATEMENT**...................................................... **Pg. 7**

**II.   STATEMENT OF FACTS**........................................................... **Pg. 8**

**III.  LEGAL STANDARD**.................................................................

    **a.**    **Opposition to Motion for Protective Order**

    **b.**    **Production of Declarants or Witnesses for Examination**

    **c.**    **Protection Against Scandalous or Defamatory Matters**

**IV.  ARGUMENT**

    **a.**    **Opposition against Motion for Protective Order**.............................

        *i.*   *Defendant does not comply with rules,*

        *ii.*   *Defendant does not demonstrate good cause,*

        *iii.*   *Defendant has deficiencies in or lacks supporting evidence,*

        *iv.*   *Balancing of public and private interests favors disclosure,*

        *v.*   *Chapter 7 Trustee has statutory duty to furnish the documents,*

        *vi.*   *Plaintiff would be prejudiced,*

        *vii.*   *Court should sustain evidentiary, procedural, or substantive objections,*

        *viii.*   *Court should award sanctions against Defendant's failure to certify meet-and-confer;*

    **b.**    **Production of Declarants or Witnesses for Examination**...........................

        *i.*   *Defendant's declarations and contentions fall short in credibility and weight,*

        *ii.*   *Court should call Defendant, or their declarants or witnesses for examination,*

        *iii.*   *Court should conduct its own examination of Defendant, declarants, or witnesses,*

        *iv.*   *Court should control mode and allow leading-questions examining Defendant, et. al;*

    **c.**    **Protection Against Scandalous or Defamatory Matters**...........................

        *i.*   *Scandalous or Defamatory materials are statutorily excepted from public access,*

        *ii.*   *Plaintiff has identified Scandalous or Defamatory materials filed in the proceedings,*

        *iii.*   *Plaintiff as a party in interest requests Court to protect Plaintiff from the materials,*

        *iv.*   *Materials are Scandalous because they cast disgrace, offense, or shame on Plaintiff,*

        *v.*   *Materials are Defamatory because they are Untrue or Potentially Untrue,*

1

      *vi.*  *Materials are so Misleading in context as to be deemed Facially Inaccurate,*

2

      *vii.*  *Untruthfulness of the Defamatory materials are readily apparent,*

3

     *viii.*  *Potential Untruthfulness alters Plaintiff's reputation in the eyes of reasonable people,*

4

      *ix.*  *Potential Untruthfulness is Irrelevant and/or is included for an Improper End,*

5

      *x.*  *Court has duty to protect Plaintiff after statutorily excepted materials ascertained;*

6

7

## V.   CONCLUSION...............................................................

8

   → Court should **grant** Plaintiff's requests,

9

   → Court should **deny** Defendant's motions;

10

## VI.   EVIDENCE AND EXHIBITS................................................

11

   → **Declaration** of Hovanes John Tonoyan dated August 17, 2022

12

   → **Exhibit A** – Meet-and-Confer Emails between Plaintiff and Defendant's Counsel

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Bankruptcy Code**

11 U.S.C. § 704(a)(7)

**United States Code**

28 U.S.C. § 1746

**Primary Sources**

*United States v. CBS, Inc.,* 666 F.2d 364, 368-369 (9th Cir. 1982)

*San Jose Mercury News, Inc. v. United States Dist. Court,* 187 F.3d 1096, 1103 (9th Cir. 1999)

*Beckman Industries, Inc. v. International Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992)

*Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir. 2003)

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.,* 307 F.3d 1206, 1211 (9th Cir. 2002)

*Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975)

*Rivera v. NIBCO, Inc.,* 384 F.3d 822, 827-828 (9th Cir. 2004)

Roman Catholic Archbishop of Portland in Oregon v. Various Tort Claimants, 661 F.3d 417 (9th Cir. 2011)

**Secondary Sources**

*Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3rd Cir. 1994)

*United States v. Garrett,* 571 F.2d 1323, 1326, n. 3 (5th Cir. 1978)

*Deford v. Schmid Prods. Co.,* 120 F.R.D. 648, 653 (D.Md. 1987)

*Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)

In re Gitto Global Corp., 422 F.3d 1 (1st Cir. 2005)

**Federal Rules of Evidence**

Fed. R. Evid. 614

**Federal Rules of Civil Procedure**

Rule 26(c); Rule 26(g)(3)

1  Federal Rules of Bankruptcy Procedure

2  Local Bankruptcy Rules of the Central District of California

3  Local Civil Rules of the Central District of California

4  Standing Chamber Procedures of the Honorable Judge Martin R. Barash

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## PRELIMINARY STATEMENT

Plaintiff raises arguments to streamline ongoing bankruptcy and adversary proceedings, and to oppose contentions and motions proffered by the Defendant. The proceedings at issue involve commercial and financial disputes, which began with the Defendant borrowing money from creditors such as the Plaintiff, then gifting thousands of borrowed funds to an insider business partner of the Defendant, and lastly culminated in a rush to the courthouse doors weeks later to shortcut her way to a blanket discharge of those debts. Plaintiff, as one of the swindled-from creditors, sought to vindicate his rights by the filing of an adversary proceeding and lawful participation in bankruptcy case matters. The Defendant—enraged by Plaintiff's zealous advocacy and resilience against her abusive tactics—now seeks to stifle the Plaintiff's rights by filing two baseless motions lodging imagined, paranoiac accusations against Plaintiff.

The Defendant, as part of her effort to swipe thousands from the Plaintiff, overtly threatened to commit suicide if Plaintiff did not loan her thousands. To mask her threat and manufacture legitimacy around it, the Defendant made false representations regarding assets, liabilities, and revenues, including sending various records of sales and property belonging to the insider business partner but claiming them as her own. In a nutshell, the Plaintiff then loaned her thousands after her threats and misrepresentations.

Now, months later, to frantically shield her discharge efforts, the Defendant has upped her ante by flipping the narrative against Plaintiff and falsely accusing Plaintiff of threats that she herself crafted and pressured the Plaintiff with—even though the Plaintiff *has been and still is* 7000+ miles away since months before the bankruptcy—all to now further pressure the Plaintiff to abandon his litigation and rights to relief. These efforts stem from the Defendant's bizarre obsession of injuring Plaintiff *a second time* through a combination of financial and reputational assaults. Plaintiff will not be dissuaded by Defendant's tactics and has come before this Court in order to control the matter through this *Opposition* before the Defendant's litigation tactics metastasize and run wild. **The Plaintiff begs the Court to dispense justice by *granting* his Opposition and requests, and *denying* the pending motions of the Defendant.**

## II.

## STATEMENT OF FACTS

Plaintiff made a request to the Chapter 7 Trustee under 11 U.S.C. § 704(a)(7) which provides that the Trustee shall: "unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest." The Trustee obliged to fulfill the request to release bank statements and PayPal statements to the Plaintiff. The Defendant filled a Motion for Protective Order to stay the release of the documents until the Court could grant redactions of names, descriptions, and other information. The Motion was made without certifying any attempt or effort to meet-and-confer, and without any attempt or effort to seek the redactions or stay from the Plaintiff directly via informal resolution or other stipulations and methods.

Plaintiff sought the documents as he is entitled by the 11 U.S.C. § 704(a)(7) statute and for a lawful purpose, to independently examine and compute the Debtor's financial condition.

Plaintiff reached out to Debtor's Counsel to stipulate to their redactions and other requests they may have, in exchange for them withdrawing the motion or reducing portions of it. The Debtor's Counsel refused.

Debtor has made many harmful and untrue allegations against Plaintiff in their Motion for Protective Order and the attached deficient Declaration. Plaintiff refutes as many assertions of the Debtor as possible through the entirety of his Opposition brief and concurrently filed Objections.

Plaintiff asserts, incorporates, and references all factual assertions in their Adversary Complaint filed on June 24, 2022, as well as all factual assertions in their attached Declaration and overall Opposition brief.

1

2

3

## III.

## LEGAL STANDARD

### *tive Order*

ght may move for a protective order pursuant to Rule 26(c)

h provides:

very is sought may move for a protective order in the
motion must include a certification that the movant has
nfer with other affected parties in an effort to resolve
t may, for good cause, issue an order to protect
ssment, oppression, or undue burden or expense.

9

10    uired certification has been improperly made, or is

11    s, providing that:

12    ntial justification, the court, on motion or on its

13    signer, the party on whose behalf the signer

14    order to pay the reasonable expenses, including

15    ection of parties and witnesses in view of the

16    broad di                                *tates v. CBS, Inc.,* 666 F.2d 364, 368-369 (9th

17

18    Cir. 1982,                                well-established that a party wishing to obtain an order of

19    protection                   material must demonstrate that "good cause" exists for the order of

20    protection." *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786(3rd Cir. 1994). Furthermore,

21    in order to show good cause, the moving party must demonstrate a *particularized* need for protection. *See*

22    *San Jose Mercury News, Inc. v. United States Dist. Court,* 187 F.3d 1096, 1103 (9th Cir. 1999) (to obtain

23    a protective order, the moving party must make a particularized showing of good cause with respect to

24    any individual document). "Broad allegations of harm, unsubstantiated by specific examples or articulated

25    reasoning, do not satisfy the Rule 26(c) test."*Beckman Industries, Inc. v. International Ins. Co.,* 966 F.2d

26    470, 476 (9th Cir. 1992); *also see United States v. Garrett,* 571 F.2d 1323, 1326, n. 3 (5th Cir. 1978)

27

28    (requiring     "a *particular* and *specific* demonstration     of     fact     as     distinguished

from *stereotyped* and *conclusory* statements"); *Deford v. Schmid Prods. Co.,* 120 F.R.D. 648, 653 (D.Md. 1987) (requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").

In sum, to meet the "good cause" requirement, the moving party must show that specific prejudice or harm will result in the absence of a protective order. *Beckman,* 966 F.2d at 476; *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir. 2003) ("A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted."). "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.,* 307 F.3d 1206, 1211 (9th Cir. 2002). The Ninth Circuit follows the *Glenmede* guidance of the Third Circuit, recognizing several factors which are neither mandatory nor exhaustive in considering and evaluating whether "good cause" exists:

> 1) whether disclosure will violate any privacy interests;
> 2) whether the information is being sought for a legitimate purpose or for an improper purpose;
> 3) whether disclosure of the information will cause a party embarrassment;
> 4) whether confidentiality is being sought over information important to public health and safety;
> 5) whether the sharing of information among litigants will promote fairness and efficiency;
> 6) whether a party benefitting from the order of confidentiality is a public entity or official; and
> 7) whether the case involves issues important to the public.

*Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)

The ultimate discretion is left with the court to evaluate the competing considerations in light of the facts of individual cases. By focusing on the particular circumstances in the cases before them, courts are in the best position to strike the balance between overly broad use of redactions orders and the unnecessary denial of confidentiality for information that deserves it.

b. *__Production of Declarants or Witnesses for Examination__*

Fed. R. Evid. 614 ("(a) CALLING. The court may call a witness on its own or at a party's request. Each party is entitled to cross-examine the witness.(b) EXAMINING. The court may examine a witness regardless of who calls the witness.(c) OBJECTIONS. A party may object to the court's calling or examining a witness either at that time or at the next opportunity when the jury is not present.")

c. *__Protection Against Scandalous or Defamatory Matters__*

Scandalous or Defamatory materials are statutorily excepted from public access under 11 U.S.C. § 107(b)(2) which states that "on request of a party in interest, the bankruptcy court shall... protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title."

Plaintiff has identified Scandalous or Defamatory materials filed in the proceedings.

Plaintiff as a party in interest requests Court to protect Plaintiff from the materials.

Materials are Scandalous because they cast disgrace, offense, or shame on Plaintiff. *Roman Catholic Archbishop of Portland in Oregon v. Various Tort Claimants*, 661 F.3d 417, 432-33 (9th Cir. 2011) ("The Oxford English Dictionary defines "scandalous" as, among other things, "bringing discredit on one's class or position" or "grossly disgraceful." Oxford English Dictionary 575 (2d ed.2001). Other dictionaries offer similar definitions. *See, e.g.,* Webster's New World College Dictionary 1279 (4th ed.2005) ("offensive to a sense of decency or shocking to the moral feelings of the community; shameful"). Under ordinary usage, then, matter is "scandalous" if it disgraceful, offensive, shameful and the like. There is no requirement that the material be either "untrue" or "potentially untrue" or that it be irrelevant or included within a court filing for "an improper end." Because the statute is unambiguous, and does not include the glosses provided by *Gitto Global* and *Neal,* our interpretative inquiry is at an end. *See Germain,* 503 U.S. at 254, 112 S.Ct. 1146 ("When the words of a statute are unambiguous, then ... judicial inquiry is complete." (internal quotation marks omitted)). We therefore hold that the party seeking non-disclosure must establish only that the matter is scandalous as that word is commonly

understood.") *Roman Catholic Archbishop of Portland in Oregon v. Various Tort Claimants*, 661 F.3d

417, 429 (9th Cir. 2011) (" materials were "scandalous" if they were likely to cause a reasonable person

to alter his or her opinion of the priests, and were either "untrue" or "potentially untrue and irrelevant or

included within a bankruptcy filing for an improper end." Fathers M and D argue that

the bankruptcy court erred in construing the word "scandalous" in this manner, and thus erred in ruling

that the § 107(b) exception was inapplicable to them.")

      Materials are Defamatory because they are Untrue or Potentially Untrue. *In re Gitto Global*

*Corp.*, 422 F.3d 1, 11-12 (1st Cir. 2005) ("Therefore, we hold that a party may seek protection under §

107(b)(2) based on *potentially* untrue information that would alter his reputation in the eyes of a

reasonable person. To obtain protection, however, an additional showing must be made.")

      Materials are so Misleading in context as to be deemed Facially Inaccurate.

      Untruthfulness of the Defamatory materials are readily apparent.

      Potential Untruthfulness alters Plaintiff's reputation in the eyes of reasonable people. *In re Gitto*

*Global Corp.*, 422 F.3d 1, 14 (1st Cir. 2005) ("material that would cause a reasonable person to alter his

opinion of an interested party triggers the protections of § 107(b)(2) based on a showing that either (1)

the material is untrue, or (2) the material is potentially untrue and irrelevant or included within a

bankruptcy filing for an improper end.")

      Potential Untruthfulness is Irrelevant and/or is included for an Improper End. *In re Gitto Global*

*Corp.*, 422 F.3d 1, 12 (1st Cir. 2005) ("gratifying public spite, promoting public scandal, and using court

files as "reservoirs of libelous statements for press consumption."") and is not *"of concern to the*

*mission of the bankruptcy court."" In re Gitto Global Corp.*, 422 F.3d 1, 16 (1st Cir. 2005) ("filed for

"strategic reasons which would not be apparent[ ] on its face"")

      Court has duty to protect Plaintiff after statutorily excepted materials ascertained.

# IV.

## ARGUMENT

### a. *Opposition against Motion for Protective Order*

Defendant has not shown good cause for the issuance of a blanket protective order redacting names, transaction information, and descriptions in bank and PayPal statements, which the Chapter 7 Trustee has a statutory duty to provide to a party-in-interest upon request and has graciously intended to do so without objection. The Defendant has not specified particularized privacy interests warranting protection. Plaintiff seeks disclosure of the bank and PayPal statements for a proper purpose because it is necessary in its effort to ascertain, compute, and reconstruct the Debtor's financial condition six months leading up to her bankruptcy, in juxtaposition with their representations to Plaintiff and their testimony in filings and hearings—whereas the Defendant seeks their protective order as a way to abuse and force the Plaintiff to argue an opposition, unnecessarily delaying and stalling proceedings. Withholding disclosure imposes a deficit against the Plaintiff of critical information and produces an inefficient and unfair result. The Defendant voluntarily filed for bankruptcy and alleged their financial affairs as a matter of public record. It was their choice to pursue bankruptcy relief and with that comes the furnishing and turning over of their bank and PayPal statements, which there exists a heavy public interest for examining before a discharge is granted. The Plaintiff does not need to know about the Defendant's personal matters and does not care for them either.  The Plaintiff conducts himself appropriately having ceded to the Court's authority and watchful eye along with various other players in the bankruptcy system, if he steps out of line he will answer for it, with no need for comical remarks by the Defendant.

Based on the threadbare motion presented, there is not enough information furnished by the Defendant to the Court or to the Plaintiff, to properly assess the propriety of a protective order pertaining to unspecified redactions in which the Plaintiff is entitled to inspect, exhibits of which remain unexamined and unknown to the Court. *Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975) (the moving party must make a clear showing of a *particular* and *specific* need for the protective order).

1    Furthermore, Defendant has not delineated the scope and parameters of the protective order they

2    seek other than to state that they wish to broadly redact names, transaction information, and descriptions

3    at issue based upon speculative assertions and wild accusations against Plaintiff, devoid of any supporting

4    facts, evidence, testimony—or even legal standards. Defendant has <u>not submitted</u> a proposed protective

5    order for the Court's review and <u>did not make any effort to work with the Plaintiff</u> to craft a

6    stipulated protective order.  There is no way to know if the names and information Defendant seeks to

7    redact have already been disclosed and would then be a duplicative red herring, or if they seek to redact

8    businesses, corporate entities, and credit card companies from the statements as well. Defendant does not

9    even provide a number amount of the redactions they request, which could easily be computed by tallying

10    the number of redacted rows and producing the computation as part of their motion. No samples or self-

11    redacted exhibits have been furnished to the Court or the Plaintiff to gauge the extent and scope of the

12    redactions requested. Indeed, Defendant has even **entirely failed to comply** with the meet-and-confer

13    provisions of Rule 26(c), including a *refusal* to stipulate to the *very same redactions they seek* when

14    offered and proposed as a compromise by the Plaintiff, and a facial examination of their motion also

15    *reveals no legal standards or analysis, no memorandum of points and authorities*, and *deficient*

16    *evidence, i.e.* the Declaration from the Defendant herself *not dated and not signed under penalty of*

17    *perjury*, along with other unauthenticated exhibits and objectionable contentions.

18    In sum, Defendant's assertions are far too vague, sweeping, and conclusory for the Court to

19    adequately assess them, let alone issue a protective order. *See Beckman*, <u>966 F.2d at 476</u> ("*Broad*

20    *allegations of harm, unsubstantiated by specific examples* or *articulated reasoning*, do not satisfy the Rule

21    26(c) test."); *Rivera v. NIBCO, Inc.,* <u>384 F.3d 822, 827-828</u> (9th Cir. 2004) (a showing of good cause under

22    Rule 26(c) **"is a heavy burden**," requiring "*evidence, not speculation*"). The Defendant has not alleged

23    particularized facts that *show,* and not just *tell,* of alleged conduct of the Plaintiff tied to a nexus resulting

24    in *annoyance, embarrassment, oppression, or undue burden or expense* for *any* person. The *lack*

25    *of specific information, concrete examples,* or *articulated reasoning* in Defendant's motion, as well as

their *failure* to meet and confer with Plaintiff, should lend credence to the Plaintiff's contention that the instant motion is <u>essentially an attempt to obstruct the disclosure process</u> *and* to increase costs, delay proceedings, confuse the issues, and taint matters with uncorroborated, harmful, and premature allegations against the Plaintiff at the very onset of the litigation. Defendant's refusal to accept from Plaintiff the same redactions they seek a Court order for, ultimately encapsulates Defendant's improper purposes. Defendant seeks a protective order *in name only*, with the underlying goal of attrition and disparaging of the Plaintiff to abandon their case and foreclose any recovery or chance at justice through the legal system.

At this juncture, the Court should sustain all of Plaintiff's objections (included in a separate document *Creditor/Plaintiff's Objections to Debtor's Declaration and Exhibit B*—filed concurrently) against the Defendant's motion and against any proffered evidence. The Court should lift the stay against disclosure imposed by the motion, deny the Defendant's motion, and allow the Chapter 7 Trustee to move forward with their duty to disclose the *unredacted* bank and PayPal statements to Plaintiff. The Court should admonish the Defendant that if the Plaintiff is willing to stipulate to a request that the Defendant would rather litigate for in Court out of spite, then the Court can be inclined in its discretion to deny further requests from the Defendant and order the Defendant to meet-and-confer with the Plaintiff to reach stipulations identical to that of Court requested relief. The Court *must* impose appropriate sanctions against Defendant, her counsel, or *both,* for violating Fed. R. Civ. P. 26(g)(3) by their *failure—without substantial justification*—to certify *at all* a good-faith meet-and-confer effort prior to the filing of the motion for protective order. When determining what type of sanction to impose, the Court has discretion to award "reasonable expenses, including attorney's fees, caused by the violation" in addition to other evidentiary and discovery-related sanctions. The Plaintiff can provide a computation with evidence of reasonable expenses directly and proximately caused by the Defendant's violation.

To deter future and repeated violations, the Court should warn Defendant that failure to comply with applicable rules and procedures—including the meet-and-confer certification and effort

1    requirements, and other improper conduct designed to waste and the Court's time and stifle resolution of

2    various matters—can result in the imposition of sanctions against Defendant, her counsel, or both.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b. *Production of Declarants or Witnesses for Examination*

Local Rules and Chamber Procedures, as well as the Rules of Evidence, allow the Court to call witnesses and compel Defendant to produce themselves or any other witnesses to support their factual assertions and other evidence proffered. It would be prejudicial to the Plaintiff if the Court rules in favor of the Defendant based on documentary evidence alone without giving the Court itself or the Plaintiff the opportunity to examine the Defendant or any other witness they use in support of their motion. The Court is in the best position to examine the tenor, tone, sound, and mannerisms of the Defendant and witnesses, to observe visually as well any changes and fluctuations through the duration of the proceedings, and weigh credibility and veracity accordingly. The Plaintiff is aware of and respectfully asserts that this Court's Chamber procedures strongly encourage and favor live testimony over declarations and exhibit evidence, and it is for that reason the Plaintiff pleads with the Court to arrange the opportunity for the Defendant to be examined on all their assertions so that the Plaintiff can demonstrate that his opposition weighs more heavily as a result, both factually and as a matter of law.

### c. *Protection Against Scandalous or Defamatory Matters*

Plaintiff has identified Scandalous or Defamatory materials filed in the proceedings with specific citations and references below and included in the *Objections* document as well. These are also without any evidentiary support and should be disregarded, excluded, or stricken:

| Doc 20 Page 2 Lines 12-20 | "The Creditor has sent text messages and calls to the Debtor with death threats telling her, Debtor, to go kill herself. Creditor has ruined the Debtor's physical psyche and has caused Debtor to seek protection. The Creditor has contacted nearly all of the Debtor's friends and family members to harass them. Creditor is fixated on knowing every intricate of this Debtor's private life. Creditor sends text messages with varying degrees of threats and outlandish comments. He did so also with Debtor's counsel. See attached as **Exhibit B** for a copy of these text messages. The Creditor has also been harassing the Chapter 7 Trustee and the Office of the United States Trustee to pursue the Debtor in claims that are unsubstantiated." |
|---|---|
| Doc 20 Page 2 | "that turned sour and abusive." |

| | |
|---|---|
| Lines 21-22 | |
| Doc 20 Page 2<br><br>Lines 23-24 | "This completely upset the Creditor and he went on a rampage to ruin her." |
| Doc 20 Page 2<br><br>Lines 25-28<br><br>Doc 20 Page 3<br><br>Lines 1-2 | "Creditor went on to disregard the automatic stay by constantly harassing Debtor. Creditor consistently sent lengthy text messages that included statements about Creditor wanting Debtor to die, telling her how she is not safe, and all her money will be gone defending herself. Through outrage and malice, Creditor filed a baseless adversary proceeding on July 6, 2022, which will be subject to a separate motion to dismiss. " |
| Doc 20 Page 3<br><br>Lines 5-7 | "Absent that, the Creditor will see these names and contact these individuals in an effort to slander the Debtor and demand payments from these individuals." |
| Doc 20 Page 3<br><br>Lines 9-11 | "Therefore, the Creditor has no reason to see the names of the people the Debtor transferred money to other than to continue his outlandish quest to ruin this poor girl's life. " |

Plaintiff as a party in interest requests Court to protect Plaintiff from the materials.

Materials are Scandalous because they cast disgrace, offense, or shame on Plaintiff, as reasonable persons or members of the public reviewing these materials would have their perceptions of Plaintiff altered in a negative way if they were to associate the harmful assertions made by Defendant against Plaintiff, or his character and reputation.

Materials are Defamatory because they are Untrue or Potentially Untrue, and based on the lack of evidentiary support, as well as the strength and weight of Plaintiff's opposition, it would be detrimental to make any adverse finding or determination of the truth of Defendant' assertions when against Plaintiff.

Materials are so Misleading in context as to be deemed Facially Inaccurate, they are not specific and particularized, they cast broad allegations against the Plaintiff with no evidentiary support.

Untruthfulness of the Defamatory materials are readily apparent, due to the deficiencies in

1   evidence and exaggerated effect of the Defendant's assertions.

2          Potential Untruthfulness alters Plaintiff's reputation in the eyes of reasonable people, by

3   accusing Plaintiff of making death threats and other unfounded assertions.

4          Potential Untruthfulness is Irrelevant and/or is included for an Improper End, which is to

5   pressure the Plaintiff to abandon their litigation and cause financial and reputational harm to him.

6
7          Court has duty to protect Plaintiff after statutorily excepted materials ascertained, to redact or

8   seal portions of the Adversary and Bankruptcy cases that make any references to harassment, or death

9   threats, and similar exaggerated and unfounded assertions.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# V.

## CONCLUSION or PROPOSED ORDERS

Plaintiff respectfully requests that the Court fashion the following orders and relief:

1. **Continue** the August 31, 2022 *Joint Status Conference* to **November 16, 2022;**

2. **Deny *with prejudice* the Debtor's *Motion for Protective Order*** or **Continue** the August 31, 2022 hearing of it to **November 16, 2022;**

3. **Award Plaintiff Rule 26(g)(3) Sanctions** against Defendant's failure to certify meet-and-confer;

4. **Extend the Parties' Time** to Meet-and-Confer **for other matters** by **October 26;**

5. **Order the Defendant to certify and engage** in good-faith meet-and-confer efforts **before** a matter or motion is filed with the Court;

6. **Order the Defendant to produce** any *declarants* or *witnesses* for live examination during evidentiary hearings, considerations of motions, and determinations of matters of fact;

7. **Extend the Plaintiff's Time to File, Notice, Serve, and Sign** various documents accordingly if based on the dates set for certain hearings or the continued dates of them, including:

   a. File and Serve *Creditor's Opposition to Debtor's Motion for Protective Order* by **November 2;**

   b. File and Serve *Parties' Joint Status Conference Report* by **November 2;** or

   c. File and Serve *Plaintiff's Unilateral Status Conference Report* by **November 9;**

8. **Extend the Plaintiff's Time for, or Exempt from Producing,** Any Original, Wet Signatures, if Inspections Requested, **to any date and time that is no earlier than November 16;**

9. **Trigger** the Court's protection of Plaintiff against **Scandalous** or **Defamatory Matters,** and redact or seal all portions of affected materials;

10. **Assign the matters to Mediation;**

11. **Any *combination of* or *other* relief;**

1

## VI.

2

## EVIDENCE AND EXHIBITS

3

- Plaintiff's Declaration

4

- Exhibit A – Meet and Confer emails between Plaintiff and Defendant's Counsel

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2    *Plaintiff's Opposition to Defendant's Motion for Protective
     Order*

3

4    Respectfully Submitted,

5    Dated: August 17, 2022

6    HOVANES JOHN TONOYAN

7

8

9    By: _____

10   HOVANES JOHN TONOYAN
     PRO SE / SELF-REPRESENTED

11

12

13

14   For:
15   Opposition to                    Respectfully Submitted,
16   Motion for
17   Protective Order
18
19   Dated:
20
21   August 17, 2022      Hovanes John Tonoya
22                        Self-Represented
23   Original, wet signature, in blue ink,
24   in Plaintiff's possession outside U[...]
25
26
27
28

### DECLARATION OF HOVANES JOHN TONOYAN

*in Support of Plaintiff's Opposition Papers and related Requests, and the Joint Status Conference*

**Pursuant to 28 U.S.C. § 1746**

1.     I am Hovanes John Tonoyan. I am 26 years old. My mailing address for the limited purpose of receiving notice or to be served papers in these cases is 6627 Beeman Ave. North Hollywood, CA 91606. I do not reside or live there physically.

2.     I am a Creditor in Bankruptcy Case No. 1:22-bk-10283-MB and the Plaintiff in Adversary Proceeding No.: 1:22-ap-01028-MB.

3.     I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

4.     I am *pro se*. I am representing myself. *I am not an attorney.  I am not in law school. I possess no specialized training or education in the practice or field of law.* I am not represented by an attorney in either the Bankruptcy or Adversary matters. I have not retained an attorney to draft this document or any of my documents, or to add to them, delete from them, or edit them, or ghostwrite them. I have drafted this declaration entirely on my own, as well as all my case filings. I am unable to afford the full representation of an attorney at this present time.

5.     I have been outside of the United States of America, residing and living in the Caucasus region, continuously since December 2021, before the bankruptcy and adversary cases existed. I relocated outside of the country in December 2021 to improve my health and to save money. I did not relocate in the midst of the bankruptcy and adversary cases.

6.     The Debtor/Defendant in the bankruptcy and adversary case has information and knowledge, relayed directly by me to them over text and a phone call prior to their bankruptcy filing, of the facts just mentioned in **Item #5**. After the filing of their bankruptcy, I also informed their attorney that I was outside of the United States of America.

7.     While in the Republic of Armenia in May-June 2022, I sustained a mobility injury, which I am gradually recovering from. I mention this because it set me back a bit financially and from being able to perform day-to-day life tasks, including planning my return to Los Angeles.

8.     I will continue to be living, residing, and transiting in the Europe and Caucasus regions

until the first week of October 2022, which is when I have scheduled my return to Los Angeles, CA, and when I will be able to afford and secure a place to live there.

9.    I work full-time remotely and am a full-time student remotely until graduating on August 12, 2022. I balance my time to prepare for the bankruptcy and adversary cases despite my ongoing financial and life commitments and hope to settle the adversary case once done with school.

10.    I had a phone conversation with Courtroom Deputy, Julie Cetulio, on August 5, 2022, regarding my attempt and interest in filing a First Amended Complaint, and preferred procedures of the court for my upcoming opposition paper filings. I had tasked a third-party to deliver my printed First Amended Complaint with my scanned handwritten signature, to the front desk of the court for in-person filing on August 3, 2022, since that was the most reliable and timely method I had for filing. However, the document was rejected by the clerk, not filed, and not docketed. I called to follow up further on the reason. Deputy Cetulio was considerate, kind, and accommodated to my questions fairly, informing me of the requirement to have an original, wet signature on filings, and that digital or photocopied documents would not be accepted. I thanked Deputy Cetulio and let her know that I will try to call in to the August 31, 2022 hearing by Zoom so that I could read my opposition papers orally into the record as my last resort to protect my rights, if my timely filings get rejected. The matters discussed with Deputy Cetulio are substantially similar to the topics I have tried to resolve and inform opposing counsel of.

11.    Upon researching international mail providers that could mail my printed and signed documents directly to the Court for in-person equivalent filing, including documents I print and sign myself with an original, wet signature while outside of the United States of America—I discovered information that estimated the shipping and delivery time of international mail to be at least 15 days or realistically even more, when sent from the Caucasus region to the Los Angeles area, with possibility of additional delays. I have never mailed internationally before.

12.    My distance from Los Angeles over 7000 miles away since December 2021; my inability to electronically file without prior Court approval; my inability to file documents myself in-person whatsoever while I am out of the country; and my hindered ability to reliably mail or deliver internationally documents directly to the Court without weeks of delays, or via third-parties—all prevent me from being able to participate in my litigation and protect my rights adequately.

13.    I could print and sign documents and mail it to a third-party such as a local process server, to then come and file the documents in-person at the Court; or scan and sign documents and then digitally send it to a third-party such as a local process server, but that just adds another layer of cost, delay, and risk for error. I would prefer the Court simply receive my documents from me directly with my original, wet signatures already on them; or even better, for me to have approval to electronically file, notice, serve, and sign documents through the Court's system that attorneys use.

14.    The issue is that regardless of what method pursue, as long as I am outside of the country until returning in early October 2022, these alternatives will not be feasible either for timeliness or for procedure. Approval to electronically file, notice, serve, and sign documents through the Court's system, will help me immensely in almost all these areas.

15.    These circumstances are outside of my control, and limited funds are only a part of the greater challenge. If I was able to return to the United States of America sooner; or if I was able to print, sign, and scan or mail documents to the Court with a shorter delivery period in time to meet any of my deadlines in the case—I would do so, and I am diligently making an attempt and effort to do so. Being served documents at a United States mailing address and accessing it remotely is different from being able to file and mail documents myself or having them properly served by a non-party afterwards.

16.    I cannot afford to fly back to Los Angeles yet, because I do not have a place to live there yet, and I do not have the funds saved up yet for my flight and any rental deposits and applications.

17.    I have been searching diligently for any international mail providers in the Republic of Armenia, or any other country that I might transit in until early October 2022, but I have not come across any results from my searches, that would allow me any shorter mailing periods.

18.    Within my knowledge and calculations, my deadline to file my *First Amended Complaint* as a matter of course was by August 3, 2022 without court approval or opposing party stipulation. The deadline to have our earliest *joint meet-and-confer with opposing counsel* for set matters is by August 10, 2022. The deadline to file my oppositions to the *12(b)(6) Motion to Dismiss* and the *Motion for Protective Order*, and to file the *Joint Status Conference Report* is by August 17, 2022. I need to provide notice or serve various parties for various documents by certain deadlines as well.

19.    As a result of the facts set above for circumstances out of my control, despite my

1  diligence and attempts to accommodate and resolve the challenges, I am unable to meet these deadlines

2  without compromising on timeliness or procedure, or both.

3      **20.**    I will do my best to call in to the August 31, 2022 hearings by Zoom and will prepare to

4  do so, including making any oral arguments and motions as the Court may allow. However, that still

5  does not alleviate the hurdles pressed against my obligation to meet deadlines in the case and does not

6  avoid the prejudice and harm that will occur if the case and hearings proceed without my fair

7  participation and ability to get written documents filed.

8      **21.**    The last time I saw, observed, or perceived Lusine Cristine Dokuzyan in person with my

9  own senses, was over 2 years ago, sometime around the summer of the year 2020. She had asked me for

10  a few favors to drive her to and from the supply store, and to drive her to the airport and pick her up

11  from it at a later date. Around this time in the summer of year 2020, Lusine Cristine Dokuzyan also

12  communicated to me that she co-owned and operated a business with a business partner. I never knew

13  the name of this business partner and was never told their name. With me, Lusine Cristine Dokuzyan has

14  only ever referred to him as her business partner in any communication or reference to him or their

15  business. There is not a single written communication I have identified from Lusine Cristine Dokuzyan

16  to me that says the name of the business partner. I found out the name of this business partner, Felipe

17  Kamey Mendez, only after I reviewed the public disclosures and filings of the bankruptcy case.

18      **22.**    Prior to the occurrences in **Item #22**, the other times I saw, observed, or perceived Lusine

19  Cristine Dokuzyan in person with my own senses, was in August 2018 when we crossed paths

20  unexpectedly at a restaurant in Burbank, CA, and prior to that I had invited Lusine Cristine Dokuzyan

21  over to my family member's home in January 2018 to spend time together playing with my puppy. The

22  last times I regularly spent any time with Lusine Cristine Dokuzyan were between the years 2008-2017.

23      **23.**    Around January 4, 2022, Lusine Cristine Dokuzyan transmitted to me written text

24  messages from her electronic device(s) with threats to commit suicide if her business did not work out

25  that year. Around January 18, 2022, she transmitted to me in written text messages from her electronic

26  device(s) a request for thousands of dollars as a loan to her to be advanced from my credit cards.

27      **24.**    The only phone call, or video call, or form of live audio/video transmission that I have

28  had with Lusine Cristine Dokuzyan in the year 2022 was around January 18, 2022, shortly after the

written request for the loan. I did not solicit this loan request or pre-offer it, Lusine Cristine Dokuzyan reached out to me about it on her own, and unprompted.

25.     Prior to this live 2-way video and audio call in **Item #25**, I received her consent to initiate the call, she answered when I placed the call, and we both engaged in the call. Lusine Cristine Dokuzyan and I then engaged in a discussion to find out more about her request for this loan, her need for it, what it would be used for, and what repayment arrangements we could make. Lusine Cristine Dokuzyan kept urging me to approve this loan request and advance her thousands of dollars no later than January 31st, 2022, repeating to me that she was running out of time.

26.     Lusine Cristine Dokuzyan stated to me over this video and audio call that she had recently consulted with a local bankruptcy attorney who advised her to consolidate her debts with personal loans before contemplating bankruptcy. She further stated to me that if I extended the loan to her, she would not file for bankruptcy and her business and personal finances would go on as normal.

27.     The more I questioned Lusine Cristine Dokuzyan to find out more about this request and to understand her mindset better, the more agitated and hostile she would become. I observed through transmissions from her camera to my computer screen her visibly shaking nervously; her eyes darting left, right, up, or down, not even looking at the camera or the screen; biting her nails; rubbing her face with her hands nervously; picking at her eyelashes and eyebrows; pursing her lips inwards and holding her lips shut between her clenched teeth. Towards the end of the call, Lusine Cristine Dokuzyan orally stated to me: **"I can't ask anyone else. If you don't give me this loan, I will actually kill myself."**

28.     My reactions to Lusine Cristine Dokuzyan's statements, were feelings of being intimidated, scared, shocked, worried, and anxious. I felt coerced, threatened, and pressured. I've had trouble sleeping ever since then. I felt at that moment that Lusine Cristine Dokuzyan was not giving me a choice of my own free will to approve or reject her loan request. Her ultimatum was clear, direct, and unambiguous to me, that if I didn't transfer thousands of dollars to her, she would injure herself or worse. She gave me only a matter of 2 weeks to pull together thousands of dollars and rapidly transfer it to her PayPal or Venmo, and the more questions I had asked, the more upset it would make her.

29.     When Lusine Cristine Dokuzyan made her suicide threat to me, I tried to calm her down toward the end of the call and reassure her that I would try my best to work things out with her and for

her. After ending the video and audio conversation, we continued the discussion over writing through text messages. To persuade me to approve the loan, Lusine Cristine Dokuzyan sent to me directly a screenshot of monthly sales proceeds for her business as financial documentation demonstrating her ability and intent to repay the loan from her successful business proceeds; a photo of a commercial-use embroidery machine for her business sitting in the driveway of her residence that she represented was hers and in her custody and possession; and photographs of her embroidery product creations, that she would sell for commercial-use and for profit since at least mid-2021 to January 2022.

30.    Lusine Cristine Dokuzyan never made any representation or disclosure to me that any of her creations and products were for or characterized as personal-use. She never represented that she often worked for free without pay. Nor did I perceive it as such. Lusine Cristine Dokuzyan was adamant that these were business assets that she created herself from start to finish and would sell it for profit, stating that she would make $800 to $1000 a day with the previous embroidery products she would sell.

31.    After these discussions, I reluctantly obliged to Lusine Cristine Dokuzyan's demands, and I approved the loan for an eventual subtotal of $11,000 in transfers + $820 in transaction fees, coming out to a debt owed to me at $11,820 total.

32.    Around February 25th, 2022, Lusine Cristine Dokuzyan made a repayment of $649 against the $11,820 total balance. She ceased contact with me after this occurrence, did not respond to my pre-petition inquiries about her intentions regarding the debt, and made no additional repayments to her loan balance. Even after an $11,000 infusion into her assets, she still defaulted on all her obligations.

33.    Lusine Cristine Dokuzyan left $11,171 of debt on my shoulders for me to pay down and service on my own. This debt across my credit cards has accumulated hundreds in additional interest and transaction fees, hampering my financial wellbeing, my ability to support myself, and my ability to return to the United States in a timely and affordable manner. Since Lusine Cristine Dokuzyan defaulted on her debt and filed for bankruptcy, I have faced a constant struggle to support myself despite doing whatever I could to mitigate my damages.

34.    This call referenced in **Item #25** was the last live video or audio communication that I had with Lusine Cristine Dokuzyan.

35.    Since January 18, 2022, I have not had any video or audio call with Lusine Cristine

1  Dokuzyan, I have not left her any voicemails, I have not sent her anything in the mail.

2      **36.**     The last time I saw Lusine Cristine Dokuzyan's mother was one time in the summer of

3  the year 2020 when I had picked Lusine Cristine Dokuzyan up from her residence to drive her to the

4  airport as mentioned in **Item #22.** I have not seen or heard her since then, and I have not made myself

5  seen or heard by her since then either. Prior to that, the last time I had seen Lusine Cristine Dokuzyan's

6  mother was sometime in the year 2017, over 5 years ago. At any of these occurrences, I only briefly

7  interacted with Lusine Cristine Dokuzyan's mother exchanging pleasantries and wishing her well.

8      **37.**     The last time I saw Lusine Cristine Dokuzyan's sister was sometime in the year 2017,

9  over 5 years ago. I briefly interacted with her exchanging pleasantries and wishing her well. I have not

10  seen or heard her since then, and I have not made myself seen or heard by her since then either.

11      **38.**     Lusine Cristine Dokuzyan's mother and sister are the only family members of hers that I

12  have had any in person interaction with in the last 7 years. Lusine Cristine Dokuzyan does not have

13  contact or interaction with her father. I have never met or interacted with her father. The only other

14  family members I ever interacted with of Lusine Cristine Dokuzyan were some cousins, whose names

15  and faces I do not recall, at a Halloween party in the year 2015. It was Halloween, and they were

16  wearing makeup, masks, costumes, and other alterations to their appearances that made it hard for me to

17  distinguish them in my memory. I still do not recall their names or faces. I do have photos of the event

18  that I haven't perused in years, but I don't have any contact information of these cousins.

19      **39.**     I have never had any audio, video, text, or any kind of written or digital communication

20  in my entire life with Lusine Cristine Dokuzyan's mother, sister, or any member of Lusine Cristine

21  Dokuzyan's entire family. I have not made any phone calls to any of these family members, I have not

22  sent any of them texts, I have not sent any emails to them, I haven't mail them anything.

23      **40.**     I have never performed any search or made any effort to discover the contact information

24  of Lusine Cristine Dokuzyan's mother or sister, or any other family member of hers. I do not possess

25  any knowledge of any of their contact information, including any phone numbers, or emails, or social

26  media. I have never possessed this knowledge either in my entire life. I have not sent them any letters

27  whatsoever in the mail or in any other delivery method to their residence, or to any of their electronic

28  devices.

**41.**    I have never had any 2-way audio or video calls with Lusine Cristine Dokuzyan's friends. I only know of 3 friends of Lusine Cristine Dokuzyan, that she has ever occasionally referenced, who I have met in-person at least once in my life. The most recent I crossed paths with 1 of her friends, Sofia, was in the year 2018 during the occurrence in **Item #23**. The other 2 friends Naira and Lani, I have not seen them or heard their voice in at least 5 years or more. Whenever I crossed paths with any of these 3 friends, we exchanged pleasantries, and I wished them well.

**42.**    I never made death threats to Lusine Cristine Dokuzyan, whether in writing over text, email, or social media, or orally or verbally over the phone or any form of audio transmission, or in any sort of gesture or other nonverbal noncommunicative conduct.

**43.**    I never made death threats to any family member of Lusine Cristine Dokuzyan, whether in writing over text, email, or social media, or orally or verbally over the phone or any form of audio transmission, or in any sort of gesture or other nonverbal noncommunicative conduct.

**44.**    I never made death threats to any friend of Lusine Cristine Dokuzyan, whether in writing over text, email, or social media, or orally or verbally over the phone or any form of audio transmission, or in any sort of gesture or other nonverbal noncommunicative conduct.

**45.**    I never suggested or told Lusine Cristine Dokuzyan to kill herself, whether in writing over text, email, or social media, or orally or verbally over the phone or any form of audio transmission, or in any sort of gesture or other nonverbal noncommunicative conduct. I never aided, advised, or encouraged Lusine Cristine Dokuzyan to commit suicide. I have not enabled or provided her with any means to do so either.

**46.**    Lusine Cristine Dokuzyan and her attorney have claimed that she has mental health issues, however I do not possess knowledge if that is in fact true. Lusine Cristine Dokuzyan has never told me if she goes to a professional, or if she has a diagnosis for anything, or if she has a medicine prescription for any psychological ailment. I have never asserted or made an admission in any of my legal papers that Lusine Cristine Dokuzyan has mental health issues. I have only referenced what she herself claimed to me, claims that I myself doubt are even true. I don't possess a belief that Lusine Cristine Dokuzyan has mental health issues or is suffering in any way from mental health issues. My belief is that she fakes and feigns mental health issues to garner sympathy and to abuse her victims.

47.      Lusine Cristine Dokuzyan and her attorney Sevan Gorginian have made and published numerous false allegations against me in this bankruptcy case without evidence or witnesses to support their allegations. I am specifically and further refuting those false allegations in this declaration.

48.      The only contacts either sent or received with Sevan Gorginian and I, were a few emails between March 16, 2022 to April 12, 2022, and then most recently through August 2022.

49.      The substance of the March-April emails were me kindly introducing myself to Sevan Gorginian after his client filed for Chapter 7 Bankruptcy and conducting outreach to Sevan Gorginian to support settlement discussions and meet-and-confer efforts to resolve our issues in these proceedings without having to litigate against one another. Sevan Gorginian stated he would inform his client about my proposal to have settlement discussions, that he wouldn't recommend settlement, but he never returned with a decision to that topic. Instead, the response I received to that inquiry from Sevan Gorginian was an email from him calling me a "clown", stating "keep going and keep wasting your time, it is amusing to watch", and accusing me of being "unemployed". Sevan Gorginian then alerted me that all my emails to him would be auto-filtered out of his inbox, and that he would not be responding. He has filed two motions in these cases without ever making a single attempt to meet-and-confer with me and this is demonstrated by his omitting of the required certification in both of his filings.

50.      I sent an email to opposing counsel Sevan Gorginian on August 5, 2022 in my good-faith attempt and effort to meet-and-confer, for both Rule 16/26 and Joint Status Conference issues; as well to express interest if time permitted to prepare or alleviate Defendant's pending motions, or press my oppositions to them; to attempt to stipulate to or procure their non-opposition to my requests for amending, continuances, and extensions too; to notify them of deficiencies in their two pending motions for August 31, 2022; to cutting them down or withdrawing them in exchange for their requested relief or other stipulated concessions; and to assign matters to mediation or explore settlement options.

51.      I included enough detail in the email for counsel to cooperate with me and come to a middle ground for an initial and continued discussions, and the emails are attached as **Exhibit A**.

52.      As of August 5, 2022, opposing counsel responded via email agreeing to holding an audio or video call Rule 16/26 meet-and-confer, set on August 9, 2022 around 2PM PST, and to prepare the status conference report jointly for submission to the Court on August 17, 2022.

53.    Opposing counsel informed me that *he and his client do not "agree to any continuance or stipulations"*.

54.    I responded with gratitude at the partial cooperation demonstrated and reiterated my interest in requesting a continuance and extension then from the Court instead, and I reiterated my interest to counsel for stipulating to cutting down or withdrawing their two pending motions, such as a potential stipulation for me to agree to the redactions they seek or for me to cut down claims from my Complaint—otherwise, I let opposing counsel know that I would oppose their two pending motions. Because I was unsuccessful in resolving the issues with opposing counsel through attempts and efforts in meet-and-confer, I now have to make my *Omnibus Motion* to seek relief from the Court.

55.    My goal is to streamline the August 31, 2022 proceedings and not have the two pending motions detract from the status conference, especially if there was something I could accommodate for opposing counsel without having to have a contentious argument involving the Court. Because I was unsuccessful in resolving the issues with opposing counsel through attempts and efforts in meet-and-confer, I now have to make my *Omnibus Motion* to seek relief from the Court.

56.    As of August 6, 2022, opposing counsel has confirmed and set our time to initial meet-and-confer for August 9, 2022 at 2PM PST but has not responded to or touched upon any further inquiries for any amending, continuances, extensions, or resolving their two pending motions.

57.    The initial meet-and-confer for our joint responsibilities and Rule 26(f) was held on August 9, 2022, around 2PM PST by audio and video. This date was the first time ever that Sevan Gorginian and I met face-to-face or voice-to-voice in some manner. I delivered to opposing counsel on August 6, 2022 via email, a bullet point list of agenda items to discuss and prepare for demonstrated in **Exhibit A**, and in conformity with court rules and standing chamber procedures. I created a collaborative Google Doc file shared with opposing counsel to organize our meet-and-confer progress and condense it into a dynamically updated written report, with version control and history. This included descriptions of the discussion and content provided for Plaintiff's initial disclosures.

58.    I never made any post-petition demand to Lusine Cristine Dokuzyan for money or payment. I never demanded any money or payment from any friend or family from Lusine Cristine Dokuzyan. I never acted to assess, collect, or recover any pre-petition debt from Lusine Cristine

1  Dokuzyan or her lawyer or her family or her friends. I never acted with any intention, motive, or goal to

2  assess, collect, or recover any debt either. I have not coerced or pressured anyone with any demands for

3  money, or to accept any conditions of any settlement. I have not violated the automatic stay and have not

4  been warned by anyone of a violation or received any cease-and-desist requests. All lawful proposed

5  settlement discussions have gone through Sevan Gorginian through the meet-and-confer effort. I

6  absolutely intend on complying with the automatic stay and do not plan to conduct myself otherwise.

7       **59.**    I received the official audio recording of the April 25th, 2022 - 341(a) Meeting of

8  Creditors held for Lusine Cristine Dokuzyan's case, from the Office the United States Trustee after

9  making a proper written request on June 22nd, 2 days before I filed my Adversary Proceeding. I

10  incorporated as much of the occurrence as I could into a written transcript as quick as I could and put

11  those portions into my Adversary Proceeding. I have not made or I do not possess an unofficial or illegal

12  recording of the 341(a) meeting. The only recording I possess or referenced is the official one from the

13  OUST themselves. Around July 28th, I also received the June 1st and July 22nd 341(a) official recordings

14  from OUST as well. I have delivered both the April 25th and July 22nd 341(a) recordings to an approved

15  transcription provider, Ben Hyatt, for transcription which is in-progress. For the time being, I have

16  listened to all 3 recordings sent to me by the OUST of the 3 total meetings of the 341(a) and based on

17  my own listening of it and identification of the speakers, I incorporated and referenced the matters as a

18  central and integral part of my Complaint or amended ones, and any motions, briefs, or arguments.

19  Opposing counsel is aware of this through our Rule 26(f) and Joint Status Report meet-and-confer.

20       **60.**    I never slandered Lusine Cristine Dokuzyan. I've had no voice conversations in-person or

21  over the phone or sent any audio transmissions of slanderous utterings to anyone about her.

22       **61.**    I never told Lusine Cristine Dokuzyan that she is not safe. I have been over 7000 miles

23  away from her for months before and during these legal proceedings. If she feels threatened by anyone,

24  she has the right to contact any law enforcement or pursue any legal remedy she wants to for her safety.

25       **62.**    I have no desire to tell everyone what Lusine Cristine Dokuzyan did to me as she has

26  already extensively acknowledged in her public bankruptcy filings and 341(a) testimony, that she

27  borrowed thousands from me and then 2 months after she sought to discharge thousands of the debts.

28       **63.**    I have not harassed the Chapter 7 Trustee or the Office of the United States Trustee. I

1  have had lawful communications with them as a fact-witness and party-in-interest, and I commend them

2  for their diligence and public service, and I respect their independent actions and determinations. They

3  commit themselves to an instrumental and vital role in the bankruptcy system, and I hold no grievance.

4      **64.**    I have no intention of contacting Lusine Cristine Dokuzyan, or her family or friends. I

5  have no intention of communicating anything derogatory about them or about Lusine Cristine

6  Dokuzyan, to them. I have no interest in Lusine Cristine Dokuzyan's personal, family, social, or

7  romantic affairs or any detail regarding her private life. I am only interested in Lusine Cristine

8  Dokuzyan's business, consumer, and financial affairs to the extent allowed for the litigation as a party

9  and encouraged by the legal system. If an individual or business entity possesses discoverable

10  information or can provide testimony germane to the litigation, I intend to follow court procedures to

11  obtain that information lawfully if I so choose. I will take great care to avoid subjecting any person to

12  annoyance, embarrassment, oppression, or undue burden and expense. I intend to cooperate with

13  opposing counsel in good-faith to resolve any disputes even if they don't want to cooperate.

14      **65.**    I filed my Adversary Proceeding because I believe Lusine Cristine Dokuzyan is not

15  entitled to a discharge, and that there exists evidence and merit to sustain my belief and position.

16      **66.**    Lastly, I want even more to resolve these matters as soon as possible if litigation can be

17  prevented. I want both myself and Lusine to move on with our lives without losing money or time. We

18  can put this behind us. This is not about winning or losing—it is about applying the facts and the law by

19  a neutral decision-maker to a situation that desperately needs it. However, her fresh start should not be

20  handed out to my detriment. I have hope that there is an answer somewhere amidst all the conflict. The

21  Court is the last resort for relief if Lusine or her counsel would rather delay and litigate instead. I heed to

22  and put my faith in the divine wisdom of this Honorable Court to help us both end this nightmare.

23  **Total Items/Paragraphs/Lines of Testimony:**    **66**

For:             Respectfully Submitted,

24  I declare under penalty of perjury under the laws of the

Declaration of
Hovnes John Tonoyan

25  United States of America that the foregoing is true and
correct, and that this declaration was executed

26  on the date:

Dated:
August 17, 2022

Hovanes John Tonoyan

27

Original, wet Signature in blu ink
in Plaintiff's possession outside

28

# EXHIBIT A

Gmail - Meet and Confer / Stipulations                                                                                                      8/17/22, 10:19 PM

 Gmail                                                    **Hovanes Tonoyan <hoviktonoyan@gmail.com>**

---

## Meet and Confer / Stipulations
10 messages

---

**Hovanes Tonoyan** <hoviktonoyan@gmail.com>                                        Sat, Aug 6, 2022 at 12:59 AM
To: "Sevan Gorginian, Esq." <sevan@gorginianlaw.com>

Sevan:

Regarding the Dokuzyan bankruptcy and adversary cases.

We need to meet and confer by August 10 - for Rule 26 and the Joint Status Conference.

Are you available to have a Zoom call sometime between now and by the end of the day August 10, and if so, when?

I plan to mail directly to the Court:
- a motion for a continuance,
- and for an extension of times to file or serve,
- or anything similar that comes to my mind.

- You are and have been aware that I have been outside of the USA since December 2021, and am residing in the Caucasus region at least 7000 miles away from Los Angeles.
- My 6627 mailing address in my papers is for everyone else's convenience in sending me or serving me papers for the case, I am not physically there or residing there.
- It will take weeks for anything I send in the mail from the Republic of Armenia to reach the USA.
- I have only identified Haypost as a provider in Gyumri, where I am at, and their estimates are 3 weeks or more.
- These circumstances are beyond my control.
- I do not have an attorney as you already know, or any attorney assistance for drafting or filing documents.
- I do not have access or approval to electronic filing, and if requested would need to go through the same filing timeframe as described and is not guaranteed to be granted.
- I will be back in the USA sometime early October 2022.

I would like to work with you in good-faith through a few combined meet-and-confers on stipulating or not-opposing to a continuance and an extension and for amending my complaint, before I seek court intervention.

I want to stipulate or move:
- to continue the 3 hearings on August 31 to November 2 or November 16 (this can be self-calendared),
- and by then I can file or mail documents timely.

I want to stipulate or move (depending on the continued hearing date):
- to file an Amended Complaint, by October 7, I could not meet the August 3 matter of course date due to my above circumstances;
- to serve any complaint, summons, and such, by October 12.
- to extend the time to meet-and-confer from August 10 to October 12 or October 26;
- to file file and serve oppositions to your motions from August 17, to October 19 or November 2;

- So, apologies in advance if there is any confusion, but let me know if you will meet and confer with me, and when, and what items you are willing to discuss or leave off the table.
- And let me know now or then if you can stipulate to a continuance and extensions and 1 amending, or if you

will be opposing or not-opposing anything I do or file.
- I would also mention that a lot of the duplicated efforts for all this can be reduced, if you withdraw both your motions and stipulate with me something I can provide to you myself if you kindly ask, such as the redactions you seek or claims you wish for me to cut from my complaint.
- Let's work together and come to a middle ground by the August 31 status conference in any event.
- Otherwise, expect for me to put up a fierce opposition in response to your actions.
- Lastly, there are multiple deficiencies in both your motions.
- You haven't met and conferred with me for either of them.
- I don't know if we will have enough time to go over them but this email describes enough of the logistics and status for what we can discuss and for you to begin to think about correcting them.

Thank you,

Hovanes Tonoyan

530 955 0731, if you call or leave a voicemail, use this number, because 818 281 7473 I do not have roaming on that

---

**Sevan Gorginian, Esq. <sevan@gorginianlaw.com>**                                    Sat, Aug 6, 2022 at 1:50 AM
To: Hovanes Tonoyan <hoviktonoyan@gmail.com>

Dear Hovanes:

The joint status report is due on the 17th. Despite it being your complaint and obligation to prepare, we will prepare the joint status report as a courtesy and you can fill in your portion on the plaintiff's side. I will then file it by the 17th. I am available for our meet and confer by video conference or phone call next week on 8/11, 8/12, 8/15, 8/16. Pick a time that is convenient for you and I will send invite for video/phone meeting.

Neither my client nor myself agree to any continuance or stipulations. You will be served documents at the address you listed on the court's docket.

Regards,

Sevan Gorginian, Esq.
Bankruptcy I Family Trusts

450 North Brand Blvd., Suite 600
Glendale I California I 91203
**Tel:** 818.928.4445 I **Fax:** 818.928.4450
www.GorginianLaw.com

We Are a Debt Relief Agency Helping People Get a Fresh Start.

CONFIDENTIALITY NOTICE: The contents of this email are intended for the addressee(s) and may contain confidential or privileged information and may be legally protected from disclosure. If you received this email by accident then please immediately let me know by replying to this email and then please delete the email. Use of this email or storing it if it is not yours is prohibited under the law. Thank you.

[Quoted text hidden]

---

**Hovanes Tonoyan <hoviktonoyan@gmail.com>**                                    Sat, Aug 6, 2022 at 2:37 AM
To: "Sevan Gorginian, Esq." <sevan@gorginianlaw.com>

Hi Sevan,

Yes, if I missed it in my email, the joint status conference report is due the 17th as are my oppositions for the motions. So keep in mind any overlapping dates for logistics sake. I'll do my part and I'm thankful for your cooperation in your part. You can certainly ask me or discuss about what I will put in.

To clarify, I propose combining our meet and confers including Rule 26 and the joint status report preparation for no later than EOD August 10. Rule 26 has to be done no later than 21 days of the 31st hearing. August 11 or after would be too late. I am available almost all day on August 9, and available anytime after 1PM PST on August 10. We can clear the air and agenda items on August 10 and follow up at those dates you listed or we can get more dates after August 16 too, as long as we have some live contact by EOD August 10 and keep developing the conversation.

You can serve me documents at the address I listed, that's why it was listed. But it's not enough to oppose the requests I want. So expect a motion to the court in some manner from me, for amending my complaint, continuing the hearings, and extending time to file and serve documents, any of my oppositions, and prepare your opposition or replies if so accordingly.

Again, I'm willing to stipulate to your redactions or reductions of claims, but we need to have a frank discussion so I can hear you out appropriately and accommodate to your requests. I strongly encourage working your motions out without court intervention so we can keep things streamlined for everyone.

Do you need copies of anything for the meet and confer emailed in advance?

Thanks,

Hovanes

On Aug 6, 2022, at 1:51 AM, Sevan Gorginian, Esq. <sevan@gorginianlaw.com> wrote:

[Quoted text hidden]

---

**Sevan Gorginian, Esq.** <sevan@gorginianlaw.com>                    Sat, Aug 6, 2022 at 3:17 AM
To: Hovanes Tonoyan <hoviktonoyan@gmail.com>

Calendar invite sent for August 9th at 2pm for meet and confer. You can join by video or phone via GoogleMeet link I sent. See you then.

I don't need any documents at this time.

Sevan Gorginian, Esq.
Bankruptcy | Family Trusts

450 North Brand Blvd., Suite 600
Glendale | California | 91203
**Tel**: 818.928.4445 | **Fax**: 818.928.4450
www.GorginianLaw.com

We Are a Debt Relief Agency Helping People Get a Fresh Start.

CONFIDENTIALITY NOTICE: The contents of this email are intended for the addressee(s) and may contain confidential or privileged information and may be legally protected from disclosure. If you received this email by accident then please immediately let me know by replying to this email and then please delete the email.  Use of this email or storing it if it is not yours is prohibited under the law. Thank you.

[Quoted text hidden]

---

**Hovanes Tonoyan** <hoviktonoyan@gmail.com>    Sat, Aug 6, 2022 at 3:26 AM
To: "Sevan Gorginian, Esq." <sevan@gorginianlaw.com>

Thank you, I got it. I will accept it shortly.

I'm going to send you bullet points of agenda items. Please take from that and include in your invite the ones you will be prepared to discuss; let me know before then what topics you want to limit it to or leave out until a later date, or that you don't want to discuss at all then or later.

Substantially, I'll be prepared to go over Rule 26 and the joint status report for the 25 minutes. And possibly assignment to mediation or settlement opportunities.

I can revisit topics for other matters at a later date.

Hovanes


On Aug 6, 2022, at 3:18 AM, Sevan Gorginian, Esq. <sevan@gorginianlaw.com> wrote:


[Quoted text hidden]

---

**Hovanes Tonoyan** <hoviktonoyan@gmail.com>    Sat, Aug 6, 2022 at 4:19 PM
To: "Sevan Gorginian, Esq." <sevan@gorginianlaw.com>

From Hovanes Tonoyan,

Please add and prepare to discuss any of the following items in the calendar invite, and let me know or cut out from the calendar invite which ones you will not be discussing; it's ok if we don't get through it all as long as we frame it as our parameters for the call and for additional calls at later dates.

Please also confirm for me an email address where you or your client can be provided notice and service of documents, if you consent to that method.

––––

**Prepare disclosures for:**
(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information-along with the subjects of that information-that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
(ii) a copy-or a description by category and location-of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or

defenses, unless the use would be solely for impeachment;
(iii) a computation of each category of damages claimed by the disclosing party-who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and
(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

(i) the name and, if not previously provided, the address and telephone number of each witness-separately identifying those the party expects to present and those it may call if the need arises;
(ii) the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and
(iii) an identification of each document or other exhibit, including summaries of other evidence-separately identifying those items the party expects to offer and those it may offer if the need arises.

—

**(2)Conference Content; Parties' Responsibilities. In conferring, the parties must consider**
- the nature and basis of their claims and defenses and
- the possibilities for promptly settling or resolving the case;
- make or arrange for the disclosures required by Rule 26(a)(1);
- discuss any issues about preserving discoverable information; and
- develop a proposed discovery plan.

**Plan to:**
- cooperate in arranging the conference
- attempting in good faith to agree on the proposed discovery plan, and
- submit to the court within 14 days after the conference a written report outlining the plan.

**3)Discovery Plan. A discovery plan must state the parties' views and proposals on:**
(A) what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;
(B) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;
(C) any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced;
(D) any issues about claims of privilege or of protection as trial-preparation materials, including-if the parties agree on a procedure to assert these claims after production-whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502;
(E) what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and
(F) any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).

—

**Aim for:**
(1) expediting disposition of the action;
(2) establishing early and continuing control so that the case will not be protracted because of lack of management;
(3) discouraging wasteful pretrial activities;
(4) improving the quality of the trial through more thorough preparation; and
(5) facilitating settlement.

**Joint Status Report:**

(2)Matters for Consideration. At any pretrial conference, the court may consider and take appropriate action on the following matters:
(A) formulating and simplifying the issues, and eliminating frivolous claims or defenses;
(B) amending the pleadings if necessary or desirable;
(C) obtaining admissions and stipulations about facts and documents to avoid unnecessary proof, and ruling in advance on the admissibility of evidence;
(D) avoiding unnecessary proof and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702;
(E) determining the appropriateness and timing of summary adjudication under Rule 56;
(F) controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37;
(G) identifying witnesses and documents, scheduling the filing and exchange of any pretrial briefs, and setting dates for further conferences and for trial;
(H) referring matters to a magistrate judge or a master;
(I) settling the case and using special procedures to assist in resolving the dispute when authorized by statute or local rule;
(J) determining the form and content of the pretrial order;
(K) disposing of pending motions;
(L) adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems;
(M) ordering a separate trial under Rule 42(b) of a claim, counterclaim, crossclaim, third-party claim, or particular issue;
(N) ordering the presentation of evidence early in the trial on a manageable issue that might, on the evidence, be the basis for a judgment as a matter of law under Rule 50(a) or a judgment on partial findings under Rule 52(c);
(O) establishing a reasonable limit on the time allowed to present evidence; and
(P) facilitating in other ways the just, speedy, and inexpensive disposition of the action.
[Quoted text hidden]

---

**Sevan Gorginian, Esq. <sevan@gorginianlaw.com>**                          Mon, Aug 8, 2022 at 11:14 PM
To: Hovanes Tonoyan <hoviktonoyan@gmail.com>

Hovanes,

Attached is a draft joint status report.  You will be filing in the answers under "plaintiff".  At the end, under Section G, if there is anything you want to briefly mention to the judge, that is where it will be written.  During tomorrow's call, you will tell me your responses and I will fill it in and then I will send it to you to sign.  I will fill in the portion for defendant and file it thereafter.

Sevan Gorginian, Esq.
Bankruptcy I Family Trusts

450 North Brand Blvd., Suite 600
Glendale I California I 91203
**Tel:** 818.928.4445 I **Fax:** 818.928.4450
www.GorginianLaw.com

We Are a Debt Relief Agency Helping People Get a Fresh Start.

CONFIDENTIALITY NOTICE: The contents of this email are intended for the addressee(s) and may contain confidential or privileged information and may be legally protected from disclosure. If you received this email by accident then please immediately let me know by replying to this email and then please delete the email.  Use of this email or storing it if it is not yours is prohibited under the law. Thank you.

[Quoted text hidden]

---

**Attorney or Party Name, Address, Teleph...mbers, and California State Bar Number.pdf**
148K

---

**Hovanes Tonoyan** <hoviktonoyan@gmail.com>                          Mon, Aug 8, 2022 at 11:33 PM
To: "Sevan Gorginian, Esq." <sevan@gorginianlaw.com>

Hi Sevan,

Thank you. I have a copy of this. I've shared with you a Google Doc to facilitate the meet-and-confer tomorrow, which
has overlapping parts with this form. Please confirm receipt and access, and feel free to make edits.

One of us can screen share as we discuss and fill things out, or we can discuss and fill things out on our own time
without screen share.

Either way I will get the Plaintiff portions in this form populated. Much of the content in the Google Doc should be
transparent and descriptive enough to help us progress.

Thanks,

Hovanes

> [Quoted text hidden]
> [Quoted text hidden]
> <Attorney or Party Name, Address, Teleph...mbers, and California State Bar Number.pdf>

---

**Hovanes Tonoyan** <hoviktonoyan@gmail.com>                          Tue, Aug 9, 2022 at 2:11 AM
To: "Sevan Gorginian, Esq." <sevan@gorginianlaw.com>

Sevan,

What is your decision on utilizing the Google Doc to aid tomorrow's discussion?

I have my Joint Status Conference Report filled out, by what date do you need a final signed copy?

I will be printing it, signing it by hand, then scanning those copies over to send to you, though I am happy to make
more changes to it based on how tomorrow's discussion goes.

I'd really appreciate some more insight into your role for tomorrow and what you will be contributing to the discussion,
what you want to leave out entirely or want to follow up on at a later date.

Tomorrow is your first opportunity to request something of me directly and without miscommunication, and I want to
work with you on concessions, but I also want it to be a two-way street if you can achieve that.

Thanks,

Hovanes
[Quoted text hidden]

---

**Sevan Gorginian, Esq.** <sevan@gorginianlaw.com>                     Tue, Aug 9, 2022 at 2:31 AM
To: Hovanes Tonoyan <hoviktonoyan@gmail.com>

We will talk about all of it tomorrow.  I have allocated 15 minutes to our meet and confer which is plenty of time to go over everything.

The joint status report, send me your draft and I will write it my portion then you will sign and I will file it.

Sevan Gorginian, Esq.
Bankruptcy I Family Trusts

450 North Brand Blvd., Suite 600
Glendale I California I 91203
**Tel**: 818.928.4445 I **Fax**: 818.928.4450
www.GorginianLaw.com

We Are a Debt Relief Agency Helping People Get a Fresh Start.

CONFIDENTIALITY NOTICE: The contents of this email are intended for the addressee(s) and may contain confidential or privileged information and may be legally protected from disclosure. If you received this email by accident then please immediately let me know by replying to this email and then please delete the email.  Use of this email or storing it if it is not yours is prohibited under the law. Thank you.

[Quoted text hidden]